Argued and submitted September 23, 2002, vacated and remanded in part; otherwise affirmed February 19, 2003

Tom KOVAC,
dba Ranch Realty,
*Appellant,*

*v.*

CROOKED RIVER RANCH CLUB
AND MAINTENANCE ASSOCIATION,
a not for profit corporation,
*Respondent.*

CROOKED RIVER RANCH CLUB
AND MAINTENANCE ASSOCIATION,
a not for profit corporation,
*Counterclaim-Plaintiff,*

*v.*

Tom KOVAC,
dba Ranch Realty,
*Counterclaim-Defendant.*

96-CV-0060; A102661

63 P3d 1197

Milo Petranovich argued the cause for appellant. With him on the brief was Lane Powell Spears Lubersky LLP.

I. Franklin Hunsaker argued the cause for respondent. With him on the brief were Joel Wilson and Bullivant Houser Bailey, a Professional Corporation.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Jefferson County denied plaintiff's application for a permit to operate his real estate business out of his residence in a development called Crooked River Ranch. Alleging collusion between the county and the development's homeowner association, plaintiff sued the association for "Combination in Restraint of Trade" and "Interference with Business Relationship." The trial court granted the association's motion for summary judgment and, in a supplemental judgment, awarded costs, disbursements, and attorney fees. On appeal, we affirm the judgment, vacate the supplemental judgment, and remand.

Because the association prevailed on its motion for summary judgment, we view the facts and inferences drawn from them in the light most favorable to plaintiff; we then uphold the judgment if there is no genuine issue of material fact and the association is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

Crooked River Ranch (Ranch), a residential development in Jefferson County, operates under covenants, conditions, and restrictions. Those "CC&Rs" establish a homeowner association called the Crooked River Ranch Club and Maintenance Association (defendant). On February 13, 1995, plaintiff, a licensed real estate agent, submitted to defendant's architectural committee a request to use part of his rented house on Ranch property as an office for his business. He also submitted the request to the Jefferson County Planning Department. At the time, two other real estate businesses operated on Ranch property, one out of a home.

Plaintiff submitted his request to the architectural committee not because it had authority to deny or grant conditional use permits (the committee's authority was limited to design features), but pursuant to an apparent agreement between the county and defendant. As described by the architectural committee in an article in defendant's newsletter, the "agreement is that **everything** that happens with Crooked River Ranch property must first go through the

Architectural Committee for approval." (Emphasis and underscoring in original.)

Defendant's committee considered the request and, on April 13, 1995, wrote a letter to a member of the county's planning department stating, "the Architectural Committee agreed to REJECT this application. The reasons for this rejection are for 1) safety; 2) non-compliance of County Zone and the CC&Rs * * *; and 3) discrepancies in the application submitted." (Underscoring in original.) Five single-spaced pages of "discrepancies" followed. Defendant's board of directors sent its own letter to the county's planning department, declaring its support of the architectural committee's letter. Fifty-five other interested citizens also submitted letters, most of which supported plaintiff's application.

The county's planning department then prepared a nine-page "Staff Report" to the Jefferson County Planning Commission (the commission), recommending that the commissioners approve the application subject to several conditions. On April 27, following public notice, the commission held a hearing. A planning department staff member presented the department's report. Nine citizens, including plaintiff, testified in favor of the application and 11 testified against. One of the opponents was a member of defendant's board of directors, who presented the architectural committee's letter and read it into the record. After further discussion, including a review of the criteria plaintiff would have to meet in order to receive approval, the commission voted four to one to deny the application. The stated reasons for the denial were that plaintiff's requested conditional use was "not * * * consistent with the Comprehensive Plan and the objectives of the Zoning Ordinance and other applicable policies of the County," that the use would not "preserve assets of a particular interest to the community," and that plaintiff did not establish that he had "a bona fide intent and financial capability to use and develop the land as proposed to insure that the Conditional Use Permit will be acted on in an appropriate manner."

Plaintiff appealed the denial to the Jefferson County Board of Commissioners (board). The board, after public notice, held a hearing on July 26, 1995. After testimony from

opponents and proponents and review of written testimony as well as staff recommendations, the board deliberated and voted to deny the application based on the following findings:

"1. Public Safety, ingress and egress at the location site was determined to be a hazard.

"2. On the face of the application, that the applicant did not satisfy the definition of a Home Occupation because he was not going to reside in the dwelling as a full time occupant.

"3. That the applicant failed to meet Criteria #4, the proposal will preserve assets of particular interest to the community."

The board mailed notice of its decision to plaintiff on October 18, 1995. In addition to informing him of the denial, the notice also stated, "If you feel that not all the facts have been presented or the information is incorrect, this decision may be appealed to the Land Use Board of Appeals (LUBA)." Plaintiff did not appeal to LUBA. Instead, he filed the present action against defendant in circuit court.

Plaintiff first assigns error to the trial court's grant of summary judgment on the antitrust claim. That claim rested on plaintiff's three-part theory alleging, first, that the evidence raises a question of fact regarding whether defendant and the county had an agreement under which the county delegated land use decisions on the Ranch to defendant; second, that such an agreement amounted to a violation of Oregon's "little Sherman Act," ORS 646.725, which prohibits "[e]very contract, combination * * * or conspiracy in restraint of trade"; and third, that defendant's anticompetitive conduct was not immune from antitrust liability under the so-called *Noerr-Pennington* doctrine, which immunizes, on First Amendment grounds, attempts to persuade government to make policy decisions even when those decisions might have an anticompetitive intent and effect. *See Eastern R. Conf. v. Noerr Motors*, 365 US 127, 81 S Ct 523, 5 L Ed 2d 464 (1961); *Mine Workers v. Pennington*, 381 US 657, 85 S Ct 1585, 14 L Ed 2d 626 (1965); *see also* ORS 646.715(2) (federal court decisions are persuasive authority in construing Oregon antitrust law). The trial court rejected that theory, holding that defendant's injury, if any, "was a result of the

denial both by the Jefferson County Planning Commission and by the Jefferson County Commission. The Court believes that the Defendant's Motion for Summary Judgment, based on the *Noerr-Pennington* doctrine is correct."

■ We agree. We need not reach plaintiff's contentions that an agreement to delegate governmental standard-setting authority to a private entity violates Oregon's anti-trust statute and does not qualify for *Noerr-Pennington* immunity. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 US 492, 108 S Ct 1931, 100 L Ed 2d 497 (1988) (so holding where legislature adopted trade group's standards as law). Nor need we reach defendant's counter-argument that such a holding in the present case "would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade.' " *Columbia v. Omni Outdoor Advertising, Inc.*, 499 US 365, 379, 111 S Ct 1344, 113 L Ed 2d 382 (1991) (citation omitted). Rather, plaintiff's theory suffers from a more basic flaw. It depends on the existence of an agreement between county officials and defendant under which the county abdicated its own authority to render a decision on plaintiff's application and gave that authority to defendant.[1] On the evidence in the summary judgment record and the inferences flowing from it, no rational factfinder could believe that such an agreement existed.

Plaintiff identifies several items as evidence of the alleged anticompetitive agreement. The first is the article in defendant's newsletter quoted above referring to "an agree-ment that **everything** that happens with Crooked River Ranch property must first go through the Architectural Com-mittee for approval" and that "**ALL** businesses located within homes of Crooked River Ranch residents must come through the Architectural Committee for approval." (Emphasis and underscoring in original.) The plain meaning of those state-ments is that Ranch rules require residents to submit build-ing and land use proposals to the committee, presumably

---

[1] Plaintiff expressly disavows any challenge based on an agreement among members of defendant association, stating, "Plaintiff does not claim that a group of Ranch residents conspired or agreed to restrain trade * * *. The antitrust violation here is the anticompetitive agreement between the County and the Ranch."

before submission to any governmental entities that also need to act on them, in what might be analogized to an "exhaustion of remedies" requirement. Because defendant's CC&Rs may be more stringent than county or state regulations, such an agreement is an efficient way to ensure that the county does not spend time and resources evaluating applications that defendant will subsequently deny. Nothing in either statement declares, hints, or even smacks of an agreement that the governmental entities have relinquished their independent and superseding decisional authority.

The second item of evidence is defendant's letter to the county planning commission stating that "the Architectural Committee agreed to REJECT this application." (Underscoring in original.) Again, that statement appears in a letter that is manifestly defendant's input to the county's decision-making process, informing official decision-makers of defendant's opinion and explaining defendant's reasons. It carries no implication that the county has agreed to rubberstamp defendant's rejection.

The third item of evidence is a sentence contained in a 1992 report from the county planning commission recommending a change in the county's comprehensive land use plan. The sentence states, "It appears that, over time, the County and Crooked River Ranch Maintenance Association, through an informal agreement, allowed recreational use of lots and parcels on the Ranch." That statement occurred three years before the events in the present case, refers to a different issue, and, in any event, does not state or imply a delegation of governmental decision-making authority to defendant, but, at most, implies that the county was remiss in enforcement of its land use plan.

In short, a factfinder could not read that evidence to establish an agreement under which the county committed itself to follow defendant's recommendation unless the factfinder also could conclude that the exhaustive and thorough processes that the planning commission and the county commissioners went through were an elaborate sham and a conspiratorial farce. On this summary judgment record, no rational factfinder could so conclude. Defendant's actions amounted to nothing more than constitutionally protected

participation in the political process and were therefore immune from antitrust liability under the *Noerr-Pennington* doctrine.[2]

■ Plaintiff also assigns error to the trial court's grant of summary judgment on the "Interference with Business Advantage" claim. The trial court's letter opinion indicates that dismissal of the tort claim followed inevitably from dismissal of the antitrust claim. Again, we agree. The same rationale that underlies antitrust immunity in this case— concern for the free speech implications of penalizing political advocacy—applies with equal force with respect to the tort claim. Defendant's activities consist only of efforts to persuade the county to deny plaintiff's application for a conditional use permit. There are no allegations of defamation, solicitation, fraud, or any other form of speech activity the regulation of which could survive challenge under Article I, section 8, of the Oregon Constitution as "some historical exception that was well established when the first American guarantees of freedom of expression were adopted," nor is there an argument that "interference with business relationship" is such an exception. *State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982). Further, as this court held in *Willamette Dental Group v. Oregon Dental Service*, 130 Or App 487, 499, 882 P2d 637 (1994), *rev den*, 320 Or 508 (1995), conduct that is permitted under antitrust laws may not be punished as tortious interference; "such common law 'backdooring' would subvert the function of antitrust law in defining, and regulating, the boundary between permissible and impermissible competitive conduct." The court did not err in granting summary judgment against plaintiff on its "Interference with Business Advantage" claim.

■ Finally, plaintiff assigns error to the supplemental judgment awarding attorney fees to defendant. Defendant argued for an award of $48,000 pursuant to ORS 646.780(3)(a): "[T]he court may award reasonable attorney

---

[2] Defendant also contends that plaintiff cannot prevail under ORS 646.725 because he claimed only damages personal to himself and did not claim "antitrust damages," that is, damages to competition. The trial court did not reach that issue, nor do we.

fees, expert witness fees and investigative costs to the prevailing party [in an antitrust case]." Defendant also sought fees under ORS 20.105 on the ground that "there was no objectively reasonable basis for asserting the claim," but the trial court did not address that ground in its opinion. The court wrote:

> "Under ORS 646.780(3)(a), in actions under the State's Antitrust law, the Court may award reasonable attorneys fees, expert witness fees and investigative costs to the prevailing party. * * * The Plaintiff in this case elected, after losing an appeal to the Jefferson County [Board of Commissioners], not to appeal the matter to LUBA, but rather to file this action on an Antitrust basis. In reviewing the information that has been previously provided to the Court, it's the Court's opinion that if this matter was appealed to LUBA, that the Plaintiff had a better than average chance of prevailing before that body * * *."

The court subsequently entered a supplemental money judgment awarding $14,000 in attorney fees and $6,108 in costs and disbursements. On appeal, plaintiff maintains that no award of attorney fees is justified. Defendant does not contest the trial court's decision to award only $14,000 in fees instead of the $48,000 requested.

■ An award of attorney fees under ORS 646.780(3)(a) must also meet the requirements of ORS 20.075(1), which lists several factors the court must consider "in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." The factors include "such other factors as the court may consider appropriate under the circumstances of the case." We review an award of attorney fees under ORS 20.075 for abuse of discretion. ORS 20.075(3). However, in *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 188, 957 P2d 1200 (1998), the Supreme Court held that a court exercising that discretion must identify the "facts and legal criteria that the circumstances of the particular case require the court to address in making its decision to award or deny attorney fees." Those findings need not be complex or lengthy; they need not include criteria immaterial to the decision and not used by the trial court. *Id.*; *Wright v. Jones*, 155 Or App 249,

252-53, 964 P2d 1048 (1998). The purpose of requiring this specification of facts and legal standards is to permit "meaningful appellate review." *McCarthy*, 327 Or at 188.

Under the foregoing precepts, we must remand this case. Although the court's letter opinion clearly states the fact on which it based its decision to award fees—plaintiff's decision to bring this action in circuit court instead of appealing to LUBA—the opinion does not specify the legal criteria to which that fact is relevant, nor does it provide a reviewable explanation of the connection between the fact and the criteria. To review the court's decision meaningfully, we must know both. *Kusyk v. Water Resources Dept.*, 164 Or App 738, 746, 994 P2d 798 (2000) ("We cannot ascertain from the record on which statutory ground the trial court awarded fees nor the basis for making an award under that provision.").

Supplemental judgment vacated and remanded; otherwise affirmed.